John D. Albert, OSB No. 760418
Stephen T. Tweet, OSB No. 764095
Albert & Tweet LLP
P.O. Box 968
Salem, OR 97308
Tel. (503)585-2056
Fax. (503) 375-2649
jalbert@albertandtweet.com
stweet@albertandtweet.com

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re<br><br>EWTC, Management, LLC<br><br>                  Debtor. | **Case No. 12-60536-fra11**<br><br>**DISCLOSURE STATEMENT FOR**<br>**JOINT PLAN OF REORGANIZATION** |

     KARTAR SINGH KHALSA and EWTC MANAGEMENT LLC ("Debtors") submit the following Disclosure Statement for their Joint Plan of Reorganization pursuant to Chapter 11 of the Bankruptcy Code.

## I. INTRODUCTION

**1.1**    General

     On February 18, 2012 (the "Petition Date"), Kartar Singh Khalsa and EWTC Management, LLC (also referred to as "Debtors") filed voluntary petitions for relief under Chapter 11 of Title II of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the District of Oregon at Eugene(the "Bankruptcy Court").

     Pursuant to Section 1125 of the Bankruptcy Code, Debtors have prepared and filed this Disclosure Statement, which was approved by the Bankruptcy Court on _____, 2012, for submission to holders of claims, along with the Joint Plan of Reorganization (the "Plan"). This Disclosure Statement is provided for the purpose of explaining the Plan and to give creditors

information so that they may have a better understanding of the Debtors and the Joint Plan and thereby make a reasonably informed decision in exercising their right to vote on acceptance of the Plan.

THE ONLY REPRESENTATIONS WHICH ARE AUTHORIZED OR WHICH MAY BE MADE CONCERNING THE DEBTOR, THE VALUE OF ITS ASSETS OR THE PLAN OF LIQUIDATION, ARE THE REPRESENTATIONS CONTAINED HEREIN. THE FINANCIAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS NOT BEEN SUBJECT TO AN AUDIT BY AN INDEPENDENT CERTIFIED PUBLIC ACCOUNTANT. FOR THAT REASON, THE DEBTORS ARE NOT ABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED IN THE DISCLOSURE STATEMENT IS WITHOUT INACCURACY. HOWEVER, GREAT EFFORT HAS BEEN MADE TO ENSURE THAT ALL SUCH INFORMATION IS FAIRLY PRESENTED.

**1.2** Chapter 11 Plan Confirmation Process

The Bankruptcy Code is a remedial statute designed to effect the reorganization of financially distressed entities and individuals or the orderly liquidation of their assets. Formulation and confirmation of a plan is a principal function of a Chapter 11 case. A plan may affect the claims and interests of all parties, provide for the assumption or rejection of executory contracts and unexpired leases, and provide for the prosecution or settlement of claims belonging to the bankruptcy estate.

51251780.3

A.     Confirmation Requirements and Conditions Precedent.  A plan can be confirmed by the Bankruptcy Court and made binding on an impaired class of creditors if it is accepted by the holders of at least two-thirds in dollar amount and one-half in number of the claim holders who have voted on the plan.  A plan can be confirmed by the Bankruptcy Court and made binding on an impaired class of interests if it is accepted by the holders of at least two-thirds in dollar amount of the interest holders who have voted on the plan.

In the event that the requisite number of acceptances of a particular class which is impaired under a plan is not obtained, the Bankruptcy Court may nonetheless confirm the plan if the Bankruptcy Court finds under Section 1129(b) of the Bankruptcy Code that the plan accords fair and equitable treatment of any such class rejecting the plan.  Additionally, a debtor may ask the Court to find that certain of the classes are impaired.  Creditors and interest holders whose claims are unimpaired are deemed to have accepted the plan.

The Bankruptcy Code requires that if a class of claims is impaired under the plan, at least one class of claims that is impaired must vote to accept the plan in order for the plan to be confirmed.

Further, in order for a plan to be confirmed, the Bankruptcy Code requires, among other things, that (a) the plan be proposed in good faith, (b) the debtor disclose specified information concerning payments made or promised to insiders, and (c) the plan comply with the applicable provisions of Chapter 11 of the Bankruptcy Code.  Section 1129(a) of the Bankruptcy Code also imposes requirements that (a) confirmation of the plan is not likely to be followed by the need for further financial reorganization, and (b) the plan be fair and equitable with respect to each class of claims or equity security (stock) interests which is impaired under the plan.

Before a plan may be confirmed, the Bankruptcy Court must find (with certain exceptions) that the plan provides, with respect to each class, that each holder of a claim or equity security interest of such class either (a) has accepted the plan, or (b) will receive or retain

51251780.3

under the plan on account of such claim or equity security interest, property of a value, as of the Effective Date (as defined in the plan), that is not less than the amount that such person would receive or retain if the debtor were, on the Effective Date, liquidated under Chapter 7 of the Bankruptcy Code.

51251780.3

B.      Modification of the Plan.  The Debtor may propose amendments to or modifications of the Plan under Section 1127 of the Bankruptcy Code at any time prior to the date on which the Court enters an order confirming the Plan (the "Confirmation Date").  After the Confirmation Date, the Debtor may remedy any defects or omissions or reconcile any inconsistencies in the Plan or in the order confirming the Plan pursuant to Section 1129 of the Bankruptcy Code (the "Confirmation Order") in such manner as may be necessary to carry out the purposes and intent of the Plan so long as the holders of Claims and Equity Security Interests are not materially and adversely affected.

C.      Revocation of the Plan.  The Debtor reserves the right to revoke and withdraw the Plan at any time prior to the Confirmation Date.  In the event of such withdrawal or revocation, or if confirmation does not occur, the Plan shall be deemed null and void.  In such event, nothing contained herein shall be deemed to constitute a waiver or release of any claims by or against the Debtor or to prejudice in any manner the rights of the Debtor.

D.      Defined Terms.  Capitalized terms used in this Disclosure Statement shall have the meanings stated in the Plan or set forth herein.  To the extent of any inconsistencies between the Plan and this Disclosure Statement, the Plan shall supersede this Disclosure Statement.

E.      Undefined Terms.  A term used in this Disclosure Statement or in the Plan and not otherwise defined herein or therein but that is defined in the Bankruptcy Code has the meaning stated in the Bankruptcy Code.

## II.  PREBANKRUPTCY EVENTS.

Debtor EWTC Management, LLC ("EWTC") is a holding company whose primary asset is a 90% interest in an operating company formerly known as Golden Temple of Oregon and now called East-West Tea Company ("Tea Company"), which in turn owns or is affiliated with various European subsidiaries, all engaged in the tea business.  Debtor Kartar

Singh Khalsa is a 48% member and the manager of EWTC, and is also the CEO of the Tea Company. EWTC's other members, representing 52% of its ownership, were also defendants in the State Court Litigation described below and have settled with the Plaintiffs.

A.     The State Court Litigation.  On September 21, 2009, Private Plaintiffs sued Debtors and other defendants in Multnomah County Circuit Court Case No. 0909-13281, and the State subsequently sued the same parties and several others in Multnomah County Circuit Court Case No. 1010-14518.  Those cases were consolidated (hereafter, the "State Court Litigation").  The State Court Litigation centered on a series of transactions in 2007 (collectively, the "2007 Transaction"). Although the form of the 2007 Transaction was complicated, in substance, a religious non-profit entity called Unto Infinity, LLC ("UI") and its wholly-controlled for-profit corporation, KIIT Company, transferred 90% of their interests in valuable subsidiary operating companies to a newly-formed LLC (the Debtor, EWTC) that was owned and controlled by management insiders (including Kartar, who became a 48% member and the manager of EWTC).  UI retained a 10% interest in the profits from foreign operations and KIIT retained a 10% interest in domestic profits.

The State Court Litigation culminated in a trial in May and June, 2011.  On December 12, 2011, the State Court entered "Findings and Conclusions" ruling that UI, KIIT and their board members (including Kartar) had committed breaches of trust and breaches of fiduciary duty in connection with the 2007 Transaction.  Debtors dispute the Findings and Conclusions. There was activity in the State Court Litigation for appointment of a receiver (Special Fiduciary) for the Tea Company assets but the issues were resolved prior to the receiver taking office.

B.     Federal Court Litigation.  As of the filing of the petition date, the case against the Debtors pending in United States District Court for the District of Oregon by the Bibigi family plaintiffs against Kartar and numerous other defendants was awaiting the amended complaint from the Bibigi Plaintiffs.  These plaintiffs also obtained partial relief from stay and the amended

complaint was filed.  The complaint alleges similar facts and seeks similar relief as sought by the Private Plaintiffs in the State Court Litigation and it addition seeks damages against certain professionals involved in the 2007 transaction.  Motions to dismiss for lack of standing remain pending and the case is also subject to a mediation order entered by Judge Michael Mossman.

## III.  EVENTS DURING CHAPTER 11 CASE

### 3.1    Description of the Debtors and Debtors' Operations.

Kartar is the CEO of East West Tea Company, LLC.  At the time of the filing of the case, the Company was known as Golden Temple of Oregon, LLC as part of a earlier transaction relating to the sale of the cereal division in 2010, the name was changed with bankruptcy court approval to East West Tea Company, LLC.   Kartar is a managing member of EWTC Management,  Inc., formerly Golden Temple Management, LLC.  The LLC debtor owns 90% of East West Tea Company, LLC.  Kartar owns 48% of EWTC Management LLC.

### 3.2    Post-Bankruptcy Developments.

A.      Debtors Continued as Debtors-In-Possession.  Pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code, Debtors continued in the management and possession of their property as a debtors-in-possession since the Petition Date.  No trustee or examiner has been appointed in either case.

B.      Hiring of Professionals.  Shortly after the filing of the petition, Kartar sought and obtained Bankruptcy Court approval of Foster Pepper PLLC ("Foster Pepper") and Josselson & Potter as its counsel.  EWTC's counsel, Winston & Cashatt and Albert & Tweet were also approved.[1]  The Bankruptcy Court also entered a procedures order providing for interim payments and for periodic hearings on interim compensation.

C.      Mediation.  Shortly after the cases were filed, the Court entered Orders for Mediation.

---

[1] Winston & Cashett has since withdrawn as a cost saving measure.

Judge Michael R. Hogan was appointed mediator. Judge Hogan's associate mediator was Ford Elsaesser, Esq and Mr. Elsaesser was later formally appointed by the court. Multiple mediation sessions were held, principally in Portland and Eugene, Oregon.

D.    **Operations as Debtors in Possession.** EWTC Management, LLC has had little in the nature of operations during the bankruptcy other than participation in the mediation and compliance with required bankruptcy reports and hearings. Kartar continued to function and be compensated (at a reduced rate) as CEO of the Tea Company. As an individual debtor, Kartar filed amended budgets for his income and expenses and has operated within the terms of the amended budget. The operation of the Tea Company has been very successful resulting in an increase in sales and profits for 2012. Both Debtors have filed monthly reports in their respective cases detailing their financial activity.

E.    **Relief from Stay.** Filing of a bankruptcy case results in a automatic stay against litigation or collection efforts which are underway at the time the bankruptcy case is filed. The Private Plaintiffs sought and the Court granted relief from stay for the state court case to proceed with a reservation against enforcement of any judgment until further order of the Court. Following the partial relief from stay, the State Court entered a "Remedies Order" providing for the appointment of a pre-judgment "Special Fiduciary" (essentially, an equitable receiver) to take control of EWTC's 90% membership interest in GTO. Debtors and their co-defendants have opposed the appointment of a Special Fiduciary in State Court and in this Court. The Special Fiduciary did not assume office.

F.    **Dischargeability Cases.** The Private Plaintiffs and Bibigi filed separate suits in the Bankruptcy Court seeking to deny discharge of their claims against Kartar. Other UI board members obtained a tolling agreement for a possible claim by them against discharge of their claims.

The Private Plaintiffs' discharge case and the UI board members potential case are settled as part of the Settlement Agreement more fully described herein. The Bibigi case is not settled but the impact of the case on the Debtors is also resolved by the Settlement Agreement.

## IV.  MEDIATION AND SETTLEMENTS.

### 4.1    Private Plaintiffs and State of Oregon.

The mediation included the Private Plaintiffs and the State of Oregon who were plaintiffs in the State Court Litigation. The defendants in the State Court Litigation included the Debtors and numerous non debtor parties including other members of the UI Board and the members holding interests in EWTC Management. As stated the New Mexico litigation parties also participated in mediation. Ultimately after numerous mediation sessions with Judge Hogan and Ford Elsaesser, a settlement was reached and a Settlement Agreements were reached between the Plaintiffs and the EWTC Management officers, with Kartar and the members of the UI Board and with the Akal Plaintiffs. Agreements reflecting the mediated settlements were drafted and executed by the parties. The Settlement Agreements are endorsed by the Mediators and it is expected that the Settlement will be approved by the Bankruptcy Court. The Settlements also include Mutual Releases between and among the officers of EWTC Management and the members of the UI Board.

### 4.2    Akal Litigation.

During the bankruptcies, litigation was commenced in New Mexico against the Kartar and certain board members of Akal Security. The suit arises out of the facts related to the 2007 Transaction. The Akal Litigation was settled by the Mediators and the Akal Settlement Agreement is expected to be approved by the Bankruptcy Court.

### 4.3    UI Board and EWTC Member Releases.

Under the State Court litigation as well as other claims brought, the members of the Board of Unto Infinity and potentially, the officers of EWTC Management, had actual and potential claims against each other and against Kartar. The Mediation also settled these claims

Case 12-60536-fra11    Doc 208    Filed 10/15/12

and potential claims and the officers and UI Board members executed mutual release. This Mutual Release is also expected to be approved by the Bankruptcy Court.

### 4.4 State Court Litigation Settlement.

A.     Board Control and Transfers. The Settlement Agreement provides for the resignation and replacement of the Board Members of UI, KIIT and related entities. The Private Plaintiffs will repopulate the boards with new members. The settlement involves many issues, but most importantly for the bankruptcy cases, it provides for the transfer back to KIIT and UI of the assets that were transferred-away in the 2007 Transaction, including the interests held by EWTC Management and Kartar. The individual defendants in the State Court Litigation (including Kartar) will resign all of their positions in UI and its parent company Siri Singh Sahib Corporation and "new management," selected through a voting process by the Sikh community, will take control of those entities (and their domestic and international for-profit subsidiaries including GTO) for the benefit of the charitable trust that has been discussed in various pleadings filed in this case. Debtors will retain their malpractice claims related to the 2007 transaction, but under a formula in the Settlement Agreement Kartar will share any recoveries on those claims with KIIT and UI. In the case of EWTC, its professional claims are not shared and will be its only remaining material asset, after distribution of its cash

B.     Payment and Transfers by Kartar. Kartar will retain his assets except those being transferred under the Core Settlement. His retained assets will include some of his real property, and his personal property, and enough cash to pay administrative expenses and fund his plan. The settlement requires Kartar to pay KIIT $2 million, reimburse GTO for about $418,000 in tax distributions, and to share tax refunds and malpractice recoveries (if any) with KIIT and UI. Kartar will satisfy his payment obligations partly by paying cash and also by transferring three condominiums for credit at agreed values of $825,000 (Units 802 and 803) and $269,520 (Unit 806). Kartar indirect interest in the Tea Company through EWTC Management will cease to

51251780.3

exist and the Tea Company will be wholly owned by the new UI. The Core Settlement includes mutual releases by the parties to that settlement and will result in dismissal of the State Court Litigation and the above-described adversary proceeding, and agreement to plan impairment and provision for satisfaction of Plaintiffs' proofs of claim.

C.      Indemnity. The Settlement provides Kartar with broad indemnity, holding him harmless from any claims by third-parties arising from the 2007 Transaction, the State Court Litigation, or his management of UI and KIIT, including specifically the claims asserted by Inderjit Kaur Puri ("Bibiji")and her children in the cases currently pending in this Court and Federal District Court.

## V.  SUMMARY OF THE JOINT PLAN.

### 5.1      No Substantive Consolidation.

The assets and liabilities of the Proponents are retained separate and provided for and paid separately under this Joint Plan. There is no consolidation of assets and liabilities of the Joint Plan proponents. Simply stated: Kartar shall provide for and pay the creditors that he is responsible for from his assets and EWTC shall provide for and pay the creditors that it is responsible for from its assets.

### 5.2      EWTC.

EWTC under the Core Settlement surrenders its interest in the Tea Company and will address its remaining allowed claims. The assets are a bank account containing the capital contributed by the members at formation and potential professional liability claims.

The funds in its account will be first applied to costs of administration, then to payment of allowed claims. Proceeds of any recoveries for professional liability claims will be used to pay allowed claims.

Any proceeds of professional liability claims after payment of allowed claims will be disbursed to the members. Payment after the Effective Date will bear interest at the federal judgment rate. All allowed claims will be paid in full with interest.

### 5.3    Kartar Singh Khalsa.

A.      Secured Claims.  Kartar has a secured claim owed to Union Bank on a rental property which is current and will remain current under the Plan.

B.      Priority Claims.  Kartar has a priority claim for spousal support that is current and will be paid in accordance with the order of the state court.

C.      Unsecured Claims.     Kartar will pay unsecured claims incurred prior to the filing of the bankruptcy from savings, liquidation of assets and litigation recoveries.  Completion payment to unsecured creditors is expected to be completed in no less than 180 days.  Claims for which payment is delayed beyond the effective date of the plan will bear interest at the federal judgment rate until paid.  All allowed claims shall be paid in full with interest.

D.      Retention of Assets.  Kartar will retain his real and personal property and his future earnings to the extent not transferred or paid as  part of the settlement or utilized for payments under the Plan.

### 5.4    Litigation Settlement Claims.

Under the provisions of the Settlement Agreement the claims of a number of parties have been substantially compromised.  In return Kartar and EWTC have surrendered their interests in East West Tea Company, LLC to the Plaintiffs and Kartar has agreed to certain transfers of property and cash payments.  In addition, Kartar has agreed to share a portion of certain tax refunds, if any, as well as a part of any professional liability recovery he may obtain.  Kartar has also resigned from certain boards and organizations as provided in the Plaintiffs' Settlement and the Akal Settlement.

**5.5 Disputed Claims.**

A.     UI Board Member and EWTC Member Claims.  The claims and potential claims of the other Unto Infinity board members and EWTC members are settled by a Mutual Release. Claims for indemnity by its members against EWTC are not released.

B.     Bibigi Family Claims.  Claims filed by Bibigi and her family members against Kartar are disputed and will be adjudicated before the District Court of Oregon, before Judge Michael Mossman.  Such claims as well as potentially other now unknown claims are covered by the indemnity provisions in the Settlement Agreement and if allowed will be paid in full under the terms of that agreement.

C.     Lane Powell PC Claim.  Both the administration claim and the prepetition claim held by Lane Powell is disputed.  If allowed such claims will be paid in full as provided in the Plan.

D.     Insider Indemnification Claims.  Claims filed by the members of EWTC for indemnification were filed in an estimated amount and are subject to correction or objection hearings to establish the allowed claims.

## VI.  DEBTOR'S CURRENT FINANCIAL INFORMATION

**6.1     Kartar Summary**

As of the Petition Date, Kartar's ownership and control of the Tea Company related assets were subject to the State Court litigation, millions of dollars in alleged liabilities were disputed and in litigation.  With the Settlement Kartar's ownership interest in EWTC and indirectly in the Tea Company will be zero.  The Kartar's other assets were also disputed in the Private Plaintiff litigation, but this is resolved by the Core Settlement.

**6.2     Assents as of Confirmation. Funds on Hand.**

Kartar holds approximately $1,000,000  in his accounts including his IRA and $200,000 deposit with Josselson & Potter.

**6.3    Other Property.**

After the transfer of the condominiums in accordance with the Core Settlement Agreement Kartar will have real property as follows: 1830 NW Riverscape, Portland, Oregon condominiums, 804, 805, and 501 and the 1682 NW Riverscape rental unit.   With these properties having an estimated aggregate value of: $3,175,000.

Kartar will retain personal property such as vehicles, household goods, furniture and wearing apparel valued in his schedules at approximately $320,000.   These types of property typically have significantly reduced values on liquidation.

Kartar also scheduled a receivable from Burns Khalsa Industries and an interest in that entity.   The receivable is uncollectable and his interest in that company has no value.   The company is out of business.

## VII.  MEANS FOR EXECUTION OF THE PLAN

**7.1    Distribution of Funds**

Kartar shall serve as the Distribution Agent.   On or before the Distribution Date, or as soon as practicable thereafter, the Distribution Agent shall commence distributions to holders of Allowed Claims as provided in the Plan.

**7.2    Source of Funds**

Funds for the distributions proposed under the Plan are Kartar's accounts, proceeds of sales of assets, proceeds from professional liability claims and tax refunds.

**7.3    Post-Effective Date Administrative Expenses**

Kartar and EWTC may maintain reserves sufficient to complete outstanding legal and administrative work to complete performance under the Plan and the Settlements.

**7.4    Actions On or After the Effective Date**

On the Effective Date:

A.    The Reorganized Debtor and the Distribution Agent shall be responsible for implementing the Plan.

B.      All of the assets that have not been transferred or sold pursuant to the Settlement Agreement, including without limitation all causes of action under Chapter V of the Bankruptcy Code, shall vest in the Reorganized Debtors free and clear of all liens, security interests and claims, except as otherwise expressly provided for in the Plan or the Settlement Agreements. The Reorganized Debtor and the Distribution Agent shall comply with the Plan and make the distributions required by the Plan.

**7.5     Treatment of Executory Contracts,**

With the exception of the Settlement Agreement duties and its operating agreement EWTC has no executory contracts.  Kartar will assume the lease agreement with the tenants of his rental unit.  Both Debtors assume and will continue to perform their duties under the Settlement Agreements and the EWTC Operating Agreement

Upon the Effective Date and without any further order of the Bankruptcy Court, the Debtors shall be deemed to have rejected all executory contracts and unexpired leases not previously assumed or specifically assumed under the Plan.

Any person or entity holding a Claim based upon the rejection of an executory contract or unexpired lease must file with the Bankruptcy Court and serve on the Debtor a Proof of Claim within twenty-one (21) days after the Confirmation Date.  The failure to file a Proof of Claim by this deadline will result in such Claim being Disallowed and forever discharged.

**7.6     Claims Objections**

The Reorganized Debtor and any other party in interest shall have sixty (60) days following the Confirmation Date to file an objection to any Claim with the Bankruptcy Court. All Claim objections shall be determined by the Bankruptcy Court after notice to the person whose claim is being objected to and opportunity for a hearing in accordance with the Bankruptcy Rules.

## VIII.  DISTRIBUTIONS UNDER THE PLAN

EWTC has a number of disputed claims, but as to the claims anticipated to be allowed or compromised, there should be sufficient cash to make a distribution on the effective date with full payment to follow from the proceeds of the professional liability claims.  EWTC has no further assets.

Kartar also has disputed claims and payment provisions that are subject to the indemnity agreement in the Settlement.  Claims which are not subject to dispute should be paid in full from cash available or liquidation of property within 180 days of the Effective Date.

## IX.  POST-CONFIRMATION MANAGEMENT

After confirmation of the Plan, EWTC will be managed solely by Kartar who will serve without compensation.  Kartar will manage his personal assets and affairs,

## X.  TAX CONSEQUENCES OF THE PLAN

Tax consequences to a creditor are subject to uncertainties, including the taxpayer status of particular creditors, methods of accounting, and prior action taken by creditors with respect to their claims.  Creditors are therefore advised to consult with their tax advisers regarding the individual tax consequences of the Plan.

Tax issues related to the Settlement Agreement and Kartar's efforts to obtain tax refunds are dealt with in the Settlement Agreement and generally will not impact other creditors.

## XI.  PENDING AND CONTEMPLATED LITIGATION

The following describes potential the litigation and or adversary proceedings that may be asserted by or against the Debtors:

### 11.1   Avoidance Actions

The Debtors will retain all rights and causes of action authorized by Chapter V of the Bankruptcy Code.  This Bankruptcy Code chapter authorizes the Debtor to, under limited circumstances, seek the return of certain transfers made by the Debtor for the benefit of the estate

("Avoidance Actions").  The Debtors have analyzed its books and records to determine if there are potential Avoidance Actions.  At this time, the Debtors do not anticipate pursuing any Avoidance Actions against any person or entity.

**11.2    Objections to Claims**

The Debtor reserves the right to object to any claims scheduled or filed.

## XII.  LIQUIDATION ANALYSIS

The Debtors are using their assets, to pay creditors in full.  Because both Debtors are utilizing their assets to make full payment to their creditors, a liquidation analysis is not useful.  However, a liquidation process generally results in less efficient administration, poorer recovery on assets in "distressed sales" and reduced effectiveness in litigation both to protect the estate and to effect recoveries against third parties.

## XIII.  PAYMENTS MADE FOR SERVICES

The following amounts have been allowed and/or paid to professionals for services as of **.

| Name | Amount Incurred | Amount Allowed | Amount Paid |
|---|---|---|---|
| Foster Pepper | $ | $ | $ |
| Josselson & Potter | $ | $ | $ |
| Albert & Tweet | $ | $ | $ |
| Winston & Cashatt | $ | $ | $ |

As described in Section III.A.6 above, each month professionals have been paid part of their fees and expenses pursuant to the Interim Payment Order.  The Bankruptcy Court has not yet entered its final order allowing any fees and expenses.  The Debtor anticipates that the professionals listed above will submit applications following confirmation of the plan.

## XIV.  CONFIRMATION OF PLAN

**14.1    Voting Procedures**

A ballot to be used for voting your acceptance or rejection of the Plan is being mailed to you with this Disclosure Statement and Plan.  Holders of claims and equity security interests should read the instructions carefully, complete, date and sign the ballot, and transmit it as

instructed. In order to be counted, your ballot must be received at the indicated address not later than _____ **p.m. Pacific Standard Time on _____, 2012**. Failure to vote or a vote to reject the Plan will not affect the treatment to be accorded a claim or interest if the Plan nevertheless is confirmed.

If more than one-half in number of claimants voting and at least two-thirds in amount of the allowed claims of such claimants in each class of claims vote to accept the Plan, such classes will be deemed to have accepted the Plan. For purposes of determining whether a class of claims has accepted or rejected the Plan, only votes of those who have timely returned their ballots will be considered.

**14.2    Hearing on Confirmation**

The hearing on confirmation of the Plan has been set for _____, **2012**, at _____ Pacific Standard Time before the Honorable Frank Alley [Address]. The Bankruptcy Court will confirm the Plan at the hearing only if certain requirements, as set forth in § 1129 of the Bankruptcy Code and described below, are satisfied.

**14.3    Best Interests of Creditors**

If any holder of a claim or interest does not accept the Plan, the Bankruptcy Court must determine that each holder of a claim or interest will receive or retain under the Plan on account of that holder's claim or interest property having a value, as of the Effective Date of the Plan, that is not less than the amount such holder would receive or retain if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code on such date. This is commonly referred to as the "best interests of creditors" standard. As discussed in the section of this Disclosure Statement entitled "Liquidation Analysis," unsecured creditors would likely realize substantially less in the event of conversion of the case to a Chapter 7 proceeding than they will receive under the Plan. Accordingly, the Debtor believes that the Plan satisfies this test.

51251780.3

**14.4    Feasibility**

The Debtor must also establish that confirmation of the Plan is not likely to be followed by liquidation or the need for financial reorganization. Because the Plan does not provide for future business operations but simply the distribution of proceeds, "feasibility" is virtually assured.

**14.5    Treatment of Dissenting Classes of Creditors**

The Bankruptcy Code requires the Bankruptcy Court to find that the Plan does not discriminate unfairly, and is fair and equitable with respect to each class of claims or interests that is impaired under, and has not accepted, the Plan. Upon such a finding, the Bankruptcy Court may confirm the Plan despite the objections of a dissenting class. Because no junior class of claims or interests will receive any distribution unless and until each senior class is paid in full, the Debtor believes that this requirement of the Bankruptcy Code will be met.

**14.6    Effect of Confirmation**

The provisions of the Plan will bind the Debtor and all other parties in interest, including any creditor or equity security holder of the Debtor, whether or not such creditor or shareholder is impaired under the Plan and whether or not such creditor or equity security holder has accepted the Plan.

**XV.  CONCLUSION**

The Debtors believe that the Plan described above is fair and equitable for all concerned. Your acceptance of the Plan is therefore recommended.

DATED this 15th day of October, 2012.

KARTAR SINGH KHALSA

*s/ Kartar Singh Khalsa*

Kartar Singh Khalsa

EWTC MANAGEMENT, LLC.

*s/ Kartar Singh Khalsa*

_____

Kartar Singh Khalsa, Manager

51251780.3